# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Nina Y. Wang

Civil Action No. 25-cv-00036-NYW-CYC

THE RAMOS INJURY FIRM, LLC, d/b/a RAMOS LAW,

    Plaintiff,

v.

DAVID PETRUSHKA, individually and as Personal Representative of Estate of Naomi Petrushka,

    Defendant.

---

## ORDER ON MOTION FOR PARTIAL DISMISSAL

---

This matter is before the Court on Defendant David Petrushka's Partial Motion to Dismiss (the "Motion" or "Motion for Partial Dismissal"). [Doc. 7]. The Court has reviewed the Motion, the related briefing, and applicable case law, and it concludes that oral argument would not materially assist in resolving the Motion. For the reasons set forth in this Order, the Motion for Partial Dismissal is **GRANTED in part** and **DENIED in part**.

## BACKGROUND[1]

Liron Petrushka and Naomi Petrushka were killed in a plane crash on March 30, 2024. [Doc. 4 at ¶ 6]. Their son, David Petrushka ("Mr. Petrushka" or "Defendant"), was in charge of administering his parents' affairs. [*Id.* at ¶ 8]. Mr. Petrushka contacted Joe LoRusso ("Mr. LoRusso"), an attorney with the Ramos Injury Firm, LLC, d/b/a Ramos Law ("Ramos Law" or "Plaintiff"), and "requested legal representation" from Mr. LoRusso and

---

[1] The Court draws these facts from the Complaint, [Doc. 4], and presumes they are true for purposes of this Order.

Ramos Law "concerning claims arising out of" the plane crash. [*Id.*].

When the Parties "were in the process of entering into a written contingency fee agreement," Mr. Petrushka was contacted by Sompo International ("Sompo"), the insurance company that insured the airplane, and was asked to provide additional information for claims processing, including information about the pilot's licensure and the aircraft. [*Id.* at ¶ 10]. In response, Mr. Petrushka informed Sompo that he was "working with Joe LoRusso from Ramos Law to coordinate efforts around th[e] crash" and that Mr. LoRusso could "be a point of contact for the . . . documents needed." [*Id.* at ¶ 11]. Shortly thereafter, Mr. Petrushka and Ramos Law signed a contingency fee agreement (the "Fee Agreement") in which Mr. Petrushka hired Ramos Law "for legal services related solely to claims against a plane manufacturer in connection with an aircraft crash (N960LP) that occurred in March 2024 in Truckee, CA (the 'Claim'), or other such matters are [sic] agreed upon in writing by the parties hereto." [Doc. 7-1 at 1; Doc. 4 at ¶ 12].[2] The Fee Agreement states that Mr. Petrushka will pay Ramos Law a percentage "of the gross award or settlement of the Claim" based on the amount recovered. [Doc. 7-1 at 1; Doc. 4 at ¶ 12].

Ramos Law alleges that "Mr. LoRusso and Ramos Law provided extensive legal representation and services to Mr. Petrushka with regard to the insurance claim with Sompo," including communicating with insurance adjusters, making policy-limit demands, and advocating on Mr. Petrushka's behalf. [Doc. 4 at ¶ 14]. Plaintiff claims that "Ramos

---

[2] The Fee Agreement is not attached to Plaintiff's Complaint but is attached to Defendant's Motion for Partial Dismissal. *See* [Doc. 7-1]. The Court may consider the Agreement in ruling on the Motion for Partial Dismissal because it is referenced in the Complaint, is central to Plaintiff's claims, and no Party disputes its authenticity. *Brown v. City of Tulsa*, 124 F.4th 1251, 1264 (10th Cir. 2025).

2

Law's legal work and efforts" resulted in an insurance payment of over $9 million to Mr. Petrushka and his siblings. [*Id.* at ¶¶ 16–17]. Ramos Law alleges that it "graciously agreed to forego any attorney fee" on the insurance benefits attributed to the airplane's lost value, but "sought a 30% contingent fee"—amounting to $1,477,925.48—on the nearly $5 million in bodily injury insurance benefits that Sompo agreed to pay Mr. Petrushka and his siblings. [*Id.* at ¶¶ 20–21]. Mr. Petrushka disagrees that Ramos Law is owed this fee based on the Parties' Fee Agreement. [*Id.* at ¶¶ 22–23].

Ramos Law sued Mr. Petrushka, asserting two claims: (1) a declaratory judgment claim seeking a declaration that "pursuant to the Fee Agreement it is entitled to attorney fees in the amount of 30% of the insurance benefits that Ramos Law obtained for the benefit of Defendant and his siblings," or alternatively, a declaration that "Ramos Law is entitled to attorney fees on the basis of *quantum meruit*," [*id.* at ¶¶ 26–30]; and (2) a claim for "foreclosure on attorney's lien" based on the Fee Agreement, or alternatively, on quantum meruit principles, [*id.* at ¶¶ 31–35]. In the Motion for Partial Dismissal, Mr. Petrushka seeks an order "partially dismissing" the declaratory judgment claim and fully dismissing the foreclosure claim under Rule 12(b)(6). [Doc. 7 at 1].[3]

## LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the Court must "accept as true all

---

[3] Mr. Petrushka has asserted a declaratory judgment counterclaim against Ramos Law seeking the return of his files and papers, [Doc. 8 at 7 ¶¶ 13–17], and a counterclaim alleging a breach of fiduciary duty, [*id.* at 7–9 ¶¶ 18–34]. Ramos Law has answered these counterclaims, *see* [Doc. 23], and they are not at issue in this Order.

well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quotation omitted).  The plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).

## ANALYSIS

Mr. Petrushka seeks dismissal of the portions of Ramos Law's claims based on the Parties' Fee Agreement.  [Doc. 7 at 1].  He contends that while Ramos Law "may be entitled to a reasonable fee for what amounts to limited work it undertook related to the payment of insurance benefits to the estate," the Fee Agreement's "unambiguous language . . . makes clear that the recovery of insurance benefits from the plane's insurer is not within the scope" of the Agreement.  [*Id.* at 3].  Ramos Law disagrees, arguing that its Complaint plausibly alleges that it is entitled to a contingency fee portion of the insurance benefits under the Fee Agreement.  [Doc. 22 at 7–8].

### I. Declaratory Judgment Claim

Through the Fee Agreement, Mr. Petrushka hired Ramos Law for (1) legal services "related solely to claims against [the] plane manufacturer in connection with [the] aircraft crash" and (2) "other such matters are [sic] agreed upon in writing by the parties hereto." [Doc. 7-1 at 1].  Mr. Petrushka argues that Ramos Law's request for a declaration that the Fee Agreement entitles Ramos Law to 30% of the insurance benefits should be dismissed because the Agreement does not contemplate Ramos Law recovering a fee for insurance

4

benefit payments. [Doc. 7 at 5–8]. He argues that the Complaint does not allege that there was any agreement in writing that expanded the scope of the Fee Agreement to include insurance claims, so any insurance work does not constitute an "other such matter[] . . . agreed upon in writing by" the Parties. [*Id.* at 2, 6–8]. Ramos Law responds that it has plausibly stated a claim for relief because the Fee Agreement "covers 'other such matters [sic] are agreed upon in writing by the parties hereto,'" and it argues that it has sufficiently alleged that Ramos Law and Mr. Petrushka "agreed in writing" to "have Ramos Law pursue claims against Sompo for insurance benefits arising out of the Airplane crash." [Doc. 22 at 9 (emphasis omitted)].

The Parties do not argue that the "other matters" catchall provision is ambiguous, offer competing interpretations of this language, or make arguments using contract interpretation principles. *See* [Doc. 7; Doc. 22]. Thus, the limited question before the Court, as framed by the Parties, is whether Plaintiff has plausibly alleged that Ramos Law's alleged work on the insurance claim is an "other . . . matter[]" that the Parties "agreed . . . in writing" would be subject to the Fee Agreement.

Ramos Law argues that the Complaint plausibly alleges that "Ramos Law and Defendant agreed in writing that in addition to pursuing claims against the Airplane's manufacturer, Defendant also agreed to have Ramos Law pursue claims against Sompo for insurance benefits arising out of the Airplane crash." [Doc. 22 at 9]. In Plaintiff's view, the Complaint references numerous allegations "concerning . . . written communications between the parties [that] are sufficient to defeat the motion to dismiss." [*Id.* at 11]; *see also* [*id.* at 9–12]. For the reasons below, the Court respectfully disagrees.

The Parties primarily focus on whether the allegation about Mr. Petrushka's email

5

to Sompo, which referenced "working with" Mr. LoRusso, plausibly alleges the requisite agreement in writing.  *See* [Doc. 7 at 6; Doc. 22 at 9–11].  Mr. Petrushka argues that it does not.  He notes that the email was sent prior to the execution of the Fee Agreement, so it "cannot expand the scope of the Contingent Fee Agreement." [Doc. 7 at 6].  He also argues that "although the email makes reference to a Ramos Law Firm attorney copied on the email, it is obviously not a 'writing' between the parties (the Ramos Law Firm and Mr. Petrushka) which expands the scope of [the] Contingent Fee Agreement."  [*Id*.].  Conversely, Ramos Law argues that the email is sufficient alone "to state a plausible claim that Defendant and Ramos Law agreed in writing that Ramos Law's engagement under the Contingency Fee Agreement also included the insurance claim."  [Doc. 22 at 9].  It then states, without supporting argument, that

> [w]hile Defendant is free to dispute the merits of whether the [email] constitutes a written agreement expanding the scope of the Contingency Fee Agreement to include Ramos Law's work on the insurance claim, there can be no genuine dispute that the well-pleaded factual allegation concerning this written communication is sufficient for Ramos Law to state a plausible claim that the parties expanded the scope of the Contingency Fee Agreement to include the insurance claim.

[*Id.* at 10].

It is unclear to the Court whether Ramos Law takes the position that the email *itself* amounts to a written agreement between Mr. Petrushka and Ramos Law to expand the scope of Ramos Law's services, or whether Plaintiff believes that the email provides enough plausible support for the Court to draw an inference that Mr. Petrushka and Ramos Law must have agreed in some (unidentified and unmentioned) writing to expand the scope of the services.  Either way, the Court is unconvinced.  The Complaint alleges that Mr. Petrushka emailed Sompo in response to Sompo's request for additional

6

information.  [Doc. 4 at ¶ 11].  Mr. Petrushka's responsive email stated that "[w]e are working with" Mr. LoRusso "to coordinate efforts around th[e] crash" and that Mr. LoRusso "mentioned that he can be a point of contact for the . . . documents needed."  [*Id.*].  But Mr. Petrushka's email is simply too vague and indefinite to be plausibly read to, in and of *itself,* constitute any sort of agreement in writing "that Ramos Law's engagement under the Contingency Fee Agreement also included the insurance claim," as Plaintiff suggests.  *See* [Doc. 22 at 9].  Moreover, Plaintiff alleges that Mr. Petrushka sent the email to Sompo, with Mr. LoRusso copied.  [Doc. 4 at ¶ 11].  However, the Complaint does not contain any allegations of further communications in this email chain, such as any response from Mr. LoRusso or any action on the part of Ramos Law.  *See* [*id.*].  And in its Response, Plaintiff makes no attempt to explain how this one-way email could amount to an agreement "in writing by the parties," as contemplated in the Fee Agreement.  *See* [Doc. 22 at 9–11].

Though unclear, Plaintiff could also be arguing that through Mr. Petrushka's emailed statement that he was "working with" Mr. LoRusso, the Court could reasonably draw an inference that Mr. Petrushka and Ramos Law agreed—at some unidentified point, in some unidentified writing—to expand Ramos Law's services to include insurance claims work.  The Court declines to make such an inferential leap without additional factual averments in the Complaint itself.  Mr. Petrushka's email does not reference, or even plausibly suggest, the existence of a writing between Mr. Petrushka and Ramos Law concerning Ramos Law's work on the insurance claim.  The Court cannot "supply additional factual allegations to round out a plaintiff's complaint," *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997), or draw inferences that are not supported by a

7

plaintiff's factual averments, *Gaddy v. Corp. of the President of the Church of Jesus Christ of Latter-Day Saints*, 148 F.4th 1202, 1210 (10th Cir. 2025) (a court need not accept "unwarranted inferences" or "conclusory allegations").

Ramos Law also contends, however, that even if the allegation about Mr. Petrushka's email is insufficient to state a claim, "the allegations in Ramos Law's Complaint concerning *other* written communications between the parties are sufficient to defeat the motion to dismiss." [Doc. 22 at 11]. In support, Ramos Law directs the Court to Paragraphs 13, 14, and 15 of the Complaint. [*Id.*]. Paragraph 13 alleges that Mr. Petrushka introduced Mr. LoRusso to "several of his other legal advisors/attorneys" to "discuss and strategize the pursuant of several different claims, including the insurance claim against Sompo." [Doc. 4 at ¶ 13]. It further alleges that "[d]uring . . . verbal and written discussions," Mr. Petrushka instructed his attorneys "to work with Mr. LoRusso to perform the necessary tasks to make the insurance claim against Sompo and obtain/provide the necessary court orders and papers that were needed for Mr. LoRusso to advance the insurance claim." [*Id.*].[4] Paragraph 14 states: "Consistent with the discussions and emails with Mr. Petrushka and his other attorneys, including the emails in which Mr. Petrushka informed Sompo that Mr. LoRusso would be working on the insurance claim, Mr. LoRusso and Ramos Law provided extensive legal representation and services to Mr. Petrushka with regard to the insurance claim with Sompo." [*Id.* at

---

[4] Plaintiff argues that Paragraph 13 "alleges that Defendant and Ramos Law engaged in written communications with Defendant's other attorneys/advisors." [Doc. 22 at 11]. This is not an accurate characterization of this Paragraph, which mentions only written communications between Mr. Petrushka and his other attorneys, not Mr. LoRusso. *See* [Doc. 4 at ¶ 13].

¶ 14]. And finally, in Paragraph 15, Plaintiff alleges that "Mr. LoRusso remained in constant contact with Mr. Petrushka and his other attorneys concerning the legal services provided by Ramos Law to pursue all aspects of the insurance claim against Sompo." [*Id.* ¶ 15]. Plaintiff contends that "[w]hen viewed as a whole, the many different written communications between Ramos Law and Defendant constitute the [P]arties' written agreement to expand the scope of the legal services provided by Ramos Law under the Contingency Fee Agreement to include the insurance claim." [Doc. 22 at 12].

Tellingly, Plaintiff does not point the Court to any allegation in the Complaint that *expressly alleges* that Mr. Petrushka and Ramos Law agreed in writing to expand the scope of the Contingency Fee Agreement or plainly references any such writing. Instead, Plaintiff relies on an amalgam of vague references to various written communications between various parties. But even taking these allegations as true and viewing them in Plaintiff's favor, they are insufficient to plausibly allege that Mr. Petrushka and Ramos Law agreed in writing to expand the scope of the Fee Agreement to include insurance work. First, many of the allegations do not actually reference communications or writings *between Mr. Petrushka and Ramos Law*, the parties to the Fee Agreement. *See, e.g.*, [Doc. 4 at ¶¶ 13–14]. Allegations about Mr. Petrushka's communications with other individuals do not plausibly establish an agreement in writing between Mr. Petrushka and Ramos Law. *See* [Doc. 7-1 at 1]. Moreover, Plaintiff's allegations are simply too undeveloped to plausibly allege the existence of a written agreement expanding the scope of Ramos Law's services. Amorphous references to "written discussions," "discussions and emails," and "constant contact" between Mr. Petrushka and Ramos Law, without any supporting facts about the contents of those discussions—*including whether*

9

*there was any meeting of the minds to expand the scope of Ramos Law's services to include insurance work*—are insufficient to state a plausible claim.[5] *See Smith v. Allbaugh*, 987 F.3d 905, 912 (10th Cir. 2021) ("[C]onclusory allegations, without sufficiently pleaded supporting facts, are insufficient to state a claim.").

Contrary to Plaintiff's suggestion, the Court's focus on this critical missing link—the absence of *any* factual allegations plausibly establishing that Mr. Petrushka and Ramos Law agreed in writing to expand the scope of Ramos Law's services under the Fee Agreement—is not a determination of the merits of the claim, but an identification of a pleading deficiency. "[E]ven though modern rules of pleading are somewhat forgiving, 'a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.'" *C.J. v. Santosa & Brother Inc.*, No. 24-cv-01548-PAB-MDB, 2025 WL 933800, at *2 (D. Colo. Mar. 27, 2025) (quoting *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)). "[T]he *Twombly/Iqbal* standard recognizes a plaintiff should have at least some relevant information to make the claims plausible on their face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012); *see also Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021) (a plaintiff must "nudge the claim across the line from conceivable or speculative to plausible"). Ramos Law is of course not entitled to a liberal

---

[5] Plaintiff also directs the Court broadly to Paragraphs 11 through 19 of the Complaint to support its argument that it has adequately alleged that "Ramos Law and Defendant agreed in writing that in addition to pursuing claims against the Airplane's manufacturer, Defendant also agreed to have Ramos Law pursue claims against Sompo for insurance benefits arising out of the Airplane crash." [Doc. 22 at 9 (citing [Doc. 4 at ¶¶ 11–19])]. Like Plaintiff's other allegations, these Paragraphs do not contain any express reference to a written agreement between Mr. Petrushka and Ramos Law expanding the scope of the Fee Agreement.

10

reading of the Complaint because it is, in fact, an office of attorneys represented by a separate law firm. Therefore, some elaboration of the facts, especially when those facts are certainly within the possession of Ramos Law, is required to enable a reasonable inference that there was a written agreement expanding the scope of the Fee Agreement to include insurance work. Because the Complaint lacks those necessary allegations, Plaintiff has not plausibly alleged that the Fee Agreement covers the insurance work, and Plaintiff cannot state a claim for recovery of a contingency fee under the Agreement. Accordingly, the Motion for Partial Dismissal is respectfully **GRANTED** as to this portion of the declaratory judgment claim.

## II.   Attorney's Lien Claim

Defendant also moves to dismiss Plaintiff's second claim, which seeks to foreclose on an attorney's lien under § 13-93-114 of the Colorado Revised Statutes. [Doc. 7 at 8]. This statute provides that

> All attorneys- and counselors-at-law shall have a lien on any money, property, choses in action, or claims and demands in their hands, on any judgment they may have obtained or assisted in obtaining, in whole or in part, and on any and all claims and demands in suit for any fees or balance of fees due or to become due from any client.

Colo. Rev. Stat. § 13-93-114. Defendant argues that because there are no fees due under the Fee Agreement, there can be no attorney's lien. [Doc. 7 at 9]. Ramos Law responds in pertinent part that notwithstanding the Fee Agreement, it "is entitled to payment of attorney fees under *quantum meruit* principles," and "[e]ven under a *quantum meruit* award of attorney fees, Ramos Law has an enforceable Attorney's Lien." [Doc. 22 at 13]. Defendant does not respond to this argument in his reply brief, *see* [Doc. 25 at 7], though he elsewhere concedes that Ramos Law "may be entitled to a reasonable fee

11

under *quantum meruit principles* for the limited [insurance] work it did," [*id.* at 6].

For the reasons set forth above, because the Complaint does not plausibly allege that the requested fee is owed pursuant to the Fee Agreement, the Motion for Partial Dismissal is **GRANTED** to the extent it seeks dismissal of the portion of the foreclosure claim that depends on the Fee Agreement. However, Plaintiff's claim is also based on quantum meruit principles of recovery, and although Defendant seeks dismissal of the entirety of the foreclosure claim, *see* [Doc. 7 at 1], he does not explain why dismissal of this portion of the claim is appropriate. Indeed, Defendant expressly concedes that "[t]he Ramos Law Firm may be entitled to a reasonable fee for what amounts to limited work it undertook related to the payment of insurance benefits to the estate." [*Id.* at 2]. Accordingly, the Motion for Partial Dismissal is respectfully **DENIED** as to the quantum meruit portion of the foreclosure claim.[6]

## III. Request to Amend

In its Response to the Motion for Partial Dismissal, Ramos Law asserts that if the Court finds its allegations insufficient, it "requests leave to amend its Complaint in order to add factual allegations concerning the numerous writings that establish Defendant and Ramos Law expanded the scope of the legal services under the Contingency Fee Agreement to include Ramos Law's work on the insurance claim against Sompo." [Doc.

---

[6] "Quantum meruit is an equitable theory of recovery that arises out of the need to avoid unjust enrichment to a party in the absence of an actual agreement to pay for services rendered." *Melat, Pressman & Higbie, L.L.P. v. Hannon L. Firm, L.L.C.*, 287 P.3d 842, 847 (Colo. 2012). To recover under this theory, a plaintiff must show that "(1) at plaintiff's expense, (2) defendant received a benefit, (3) under circumstances that would make it unjust for the defendant to retain the benefit without paying." *Id.* "[I]n general, a quantum meruit claim may exist independently of a contract and need not turn on whether the contract between the parties met specified requirements." *Dudding v. Norton Frickey & Assocs.*, 11 P.3d 441, 445 (Colo. 2000).

22 at 15]. The Court declines to grant leave to amend without a formal motion, as required by the Local Rules. See D.C.COLO.LCivR 7.1(d) ("A motion shall not be included in a response or reply to the original motion. A motion shall be filed as a separate document."). Indeed, "[a] district court may deny leave to amend when 'a plaintiff fails to file a written motion and instead 'merely suggests she should be allowed to amend if the court concludes her pleadings are infirm.'" *Johnson v. Spencer*, 950 F.3d 680, 721 (10th Cir. 2020) (quoting *Warnick v. Cooley*, 895 F.3d 746, 755 (10th Cir. 2018)). If Plaintiff wishes to amend its Complaint, it must file a formal motion in accordance with the Local Rules and the Federal Rules of Civil Procedure.

## CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

(1) Defendant David Petrushka's Partial Motion to Dismiss [Doc. 7] is **GRANTED in part** and **DENIED in part**; and

(2) Plaintiff's claims seeking a declaratory judgment based on the Fee Agreement or foreclosure on an attorney's lien based on the Fee Agreement are **DISMISSED without prejudice**.

DATED: September 25, 2025

BY THE COURT:

_____
Nina Y. Wang
United States District Judge