**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 25-cv-00036-NYW-CYC

THE RAMOS INJURY FIRM, LLC, d/b/a RAMOS LAW,

    Plaintiff,

v.

DAVID PETRUSHKA, individually and as Personal Representative of Estate of Naomi
Petrushka,

    Defendant.

---

## ORDER ON MOTION TO AMEND

---

This matter is before the Court on Plaintiff's Motion for Leave to File First Amended
Complaint and Jury Demand ("Motion to Amend").  [Doc. 43].  Defendant David Petrushka
("Mr. Petrushka" or "Defendant") has responded in opposition.  [Doc. 47].  Plaintiff Ramos
Injury Firm, LLC, d/b/a Ramos Law ("Ramos Law" or "Plaintiff") has replied.  [Doc. 48].
For the reasons set forth below, the Motion to Amend is respectfully **DENIED**.

### BACKGROUND

The Court has previously summarized the background of this case, [Doc. 38 at 1–
3], and repeats it only as pertinent to the Motion to Amend.  Ramos Law represented Mr.
Petrushka in connection with a plane crash that killed his parents.  *See generally* [Doc.
4].  Mr. Petrushka was contacted by the plane's insurer, and he referred them to Joe
LoRusso, an attorney at Ramos Law, as a "point of contact for the . . . documents
needed."  [*Id.* at ¶¶ 10–11].  The Parties then entered a contingency fee agreement ("Fee
Agreement") in which Mr. Petrushka hired Ramos Law "for legal services related solely

to claims against a plane manufacturer in connection with an aircraft crash (N960LP) that occurred in March 2024 in Truckee, CA (the 'Claim'), or other such matters are [sic] agreed upon in writing by the parties hereto." [Doc. 7-1 at 1; Doc. 4 at ¶ 12]. Ramos Law alleges that it performed "extensive" legal work on the insurance claim, resulting in an insurance payment of over $9 million to Mr. Petrushka and his siblings. [Doc. 4 at ¶¶ 14, 16–17]. Ramos Law sought a contingent fee on the bodily insurance benefits that comprised nearly $5 million of the insurance payment. [*Id.* at ¶¶ 20–21]. Mr. Petrushka disputes that the Fee Agreement entitles Ramos Law to this fee. [*Id.* at ¶¶ 22–23].

Ramos Law sued Mr. Petrushka in December 2024, asserting two claims: (1) a declaratory judgment claim that it is entitled to a contingency fee on the insurance benefits, based on either the Fee Agreement or *quantum meruit* principles; and (2) a claim for "foreclosure on attorney's lien," similarly based on either the Fee Agreement or *quantum meruit*. [*Id.* at ¶¶ 26–35]. A month later, Mr. Petrushka moved to dismiss under Rule 12(b)(6), seeking partial dismissal of the declaratory judgment claim insofar as it is based on the Fee Agreement, and seeking dismissal of the foreclosure claim in full. *See* [Doc. 7].

In late September 2025, the Court granted the motion to dismiss in part. [Doc. 38]. The Court emphasized that the viability of the declaratory judgment claim turned on whether "Plaintiff has plausibly alleged that Ramos Law's alleged work on the insurance claim is an 'other . . . matter[]' that the Parties 'agreed . . . in writing' would be subject to the Fee Agreement." [Doc. 38 at 5 (quoting Doc. 7-1 at 1)]. But the Court found no "factual allegations plausibly establishing that Mr. Petrushka and Ramos Law agreed in writing to expand the scope of Ramos Law's services under the Fee Agreement." [*Id.* at

10].  The Court thus concluded that Ramos Law failed to state a claim for recovery of a contingent fee under the Fee Agreement.  [*Id.* at 11].  Applying this result to the foreclosure claim, the Court dismissed that claim insofar as it depended on the Fee Agreement but permitted the claim to go forward to the extent it relied on *quantum meruit* principles.  [*Id.* at 11–12].

Ramos Law filed the Motion to Amend approximately six weeks after the Court's ruling on the motion to dismiss.  [Doc. 43].  Ramos Law concedes that the deadline for amendment of pleadings expired on May 30, 2025, nearly six months before Ramos Law moved to amend.  [*Id.* at ¶ 7]; *see* [Doc. 28 at 11].  But Ramos Law nevertheless requests leave to amend "to cure the pleading deficiencies found by the Court" in its ruling on the motion to dismiss.  [Doc. 43 at ¶ 2].  The proposed amended pleading would add "numerous quotations from and citations/references to specific writings between Ramos Law and Defendant that constitute an agreement for Ramos Law to provide expanded legal services for matters other than claims against the plane's manufacturer."  [Doc. 48 at 9].  *See generally* [Doc. 43-1].

## LEGAL STANDARD

Because the deadline for amendment of pleadings has expired, the Court must conduct a two-step inquiry to determine whether amendment is appropriate under Rules 15 and 16 of the Federal Rules of Civil Procedure.  First, the Court determines whether the movant has demonstrated good cause to amend the Scheduling Order pursuant to Rule 16(b).  *See Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1242 (10th Cir. 2014).  Then, the Court considers whether the proposed amendment is appropriate under Rule 15(a).  *Id.*  At both steps, "the decision to grant or deny a motion

to amend is committed to the sound discretion of the trial court." *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1019 (10th Cir. 2018).

Rule 16(b) provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "In practice, this standard requires the movant to show the 'scheduling deadlines cannot be met despite [the movant's] diligent efforts.'" *Gorsuch*, 771 F.3d at 1240 (quoting *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001)). Put differently, "good cause obligates the moving party to provide an adequate explanation for any delay." *Husky Ventures*, 911 F.3d at 1020 (quotation omitted). This standard may be met, for example, when a party learns of new information through discovery, or when the governing law has changed. *Gorsuch*, 771 F.3d at 1240. "If the plaintiff knew of the underlying conduct but simply failed to raise . . . claims, however, the claims are barred." *Id.*

By contrast, Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The court may refuse leave to amend upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment. *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). A general presumption exists in favor of allowing a party to amend its pleadings, *see Foman v. Davis*, 371 U.S. 178, 182 (1962), and the non-moving party bears the burden of showing that the proposed amendment is improper, *Openwater Safety IV, LLC v. Great Lakes Ins. SE*, 435 F. Supp. 3d 1142, 1151 (D. Colo. 2020).

**ANALYSIS**

Starting with Rule 16(b), Ramos Law argues that good cause for an amendment exists because the Court did not rule on the motion to dismiss until after the deadline for amendment had passed. [Doc. 43 at ¶ 7]. Because Ramos Law had no chance to address the "pleading deficiencies" identified by the Court before the deadline expired, Ramos Law argues that it could not have met the deadline "despite its diligent efforts." [*Id.*]. Mr. Petrushka counters that the amendment is untimely and based on information that was available at the time of the original Complaint. [Doc. 47 at 4–5]. Ramos Law replies that it believed its original Complaint would survive a motion to dismiss and should not be forced to choose between "opposing a motion to dismiss or amending a complaint based upon perceived deficiencies by defendants." [Doc. 48 at 3]. The Court respectfully agrees with Mr. Petrushka.

The Tenth Circuit has explained that a litigant "cannot establish good cause if [the party] 'knew of the underlying conduct but simply failed to raise [its] claims.'" *Husky Ventures*, 911 F.3d at 1020 (quoting *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1248 (10th Cir. 2015)). As this Court previously observed, the facts regarding Ramos Law's communications with Mr. Petrushka "are certainly within the possession of Ramos Law." [Doc. 38 at 11]. Ramos Law does not dispute this point. *See generally* [Doc. 43; Doc. 48]. Thus, Ramos Law "was aware of the facts on which the amendment was based for some time prior to the filing of the motion to amend." *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 991 (10th Cir. 2019) (quotation omitted). And Ramos Law knew more than four months before the amendment deadline of Mr. Petrushka's position that its original Complaint "[did] not reference any . . . written communication between [the Parties] as

5

expanding the scope of the Contingent Fee Agreement" to include an insurance claim. [Doc. 7 at 6].  Nevertheless, Ramos Law declined to seek amendment at that time to add allegations regarding its communications with Mr. Petrushka.  *See Tesone*, 942 F.3d at 991 (affirming finding of no good cause where plaintiff learned of potential need to amend and waited for eight months before seeking leave to do so).  Nor did Ramos Law move the Court to extend the deadline for amendment of pleadings until after its ruling on the pending Motion to Dismiss.

Ramos Law provides no "adequate explanation" for this delay in seeking amendment.  *Husky Ventures*, 911 F.3d at 1020 (quotation omitted).  Ramos Law argues that the delay should be excused because it "did not have the benefit of the Court's review of its claims" until after the amendment deadline had passed.  [Doc. 48 at 4].  But a plaintiff is "not entitled to a directive from the district court informing [it] of the deficiencies of the complaint and then an opportunity to cure those deficiencies."[1]  *Graham v. Fearon*, 721 F. App'x 429, 439 (6th Cir. 2018) (quotation omitted).  Courts routinely recognize that an adverse ruling from the district court does not supply good cause for an untimely amendment.  *See, e.g.*, *Morrison Enters., LLC v. Dravo Corp.*, 638 F.3d 594, 610–11 (8th Cir. 2011) (affirming denial of leave to amend where plaintiff waited to seek amendment until after summary judgment ruling); *Romero v. Drummond Co.*, 552 F.3d 1303, 1318–

---

[1] Ramos Law cites *Beck v. American Honda Finance Corp.* for the proposition that good cause may exist where a plaintiff "did not have the benefit of the [c]ourt's review of his claims before" the deadline to amend had passed.  [Doc. 48 at 5]; No. 19-cv-02712-PAB-MEH, 2020 WL 3057339, at *4 (D. Colo. June 9, 2020).  But *Beck* involved a pro se plaintiff who had not received the usual initial review from this District's pro se division in which a party "may be permitted to file amended pleadings with instruction from the [c]ourt."  2020 WL 3057339, at *4 & n.2.  Ramos Law is neither pro se nor entitled to a court order issue-spotting its Complaint.

19 (11th Cir. 2008) (affirming finding of no good cause where plaintiffs should have known

of need to amend earlier but did not seek to amend until after district court dismissed

certain claims); *IBEW Local 98 Pension Fund v. Best Buy Co.*, 326 F.R.D. 513, 525 (D.

Minn. 2018) (observing that an "unfavorable outcome on the class certification issue" did

not justify delay in seeking amendment).  Indeed, the Tenth Circuit has suggested that

even the *filing* of a motion to dismiss—let alone an adverse disposition of such motion—

does not permit an untimely amendment, because "[t]he requirements for surviving a

motion to dismiss are matters of hornbook civil procedure law, and a party should always

ask itself whether the complaint it wants to file sets out a viable claim."  *Husky Ventures*,

911 F.3d at 1022 (quoting *Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011)).

And even if an adverse ruling could establish good cause, Ramos Law further fails to

explain why it took another six weeks to seek leave to amend after the Court issued its

ruling, particularly in light of Ramos Law's statement in its Response to the Motion to

Dismiss that it wished to "add factual allegations concerning the numerous writings that

establish Defendant and Ramos Law expanded the scope of the legal services under the

Contingency Fee Agreement to include Ramos Law's work on the insurance claim . . . ."

[Doc. 22 at 15].

In short, Ramos Law fails to show that it could not meet the deadline to amend

despite its diligent efforts.  *Gorsuch*, 771 F.3d at 1240.  Rather, as Ramos Law freely

admits, its decision not to amend before the deadline was a tactical choice based on its

belief that the Court would either rule in its favor on the motion to dismiss or otherwise

identify "deficiencies" that Ramos Law could use to refine its claims.[2]  *See* [Doc. 48 at 3–

---

[2] As Mr. Petrushka points out, however, Ramos Law's proposed amendment goes further

5]. That does not demonstrate good cause for an extension. *See Morrison Enters.*, 638 F.3d at 611 ("The district court did not abuse its discretion in concluding Morrison's tactical choice [to pursue some claims instead of others] did not demonstrate diligence or good cause."); *Donaldson v. Carnival Corp.*, No. 20-cv-23258-Scola, 2021 WL 111732, at *1 (S.D. Fla. Jan. 12, 2021) ("The [p]laintiff's decision to make a strategic choice to await the Court's ruling on the . . . motion to dismiss does not constitute good cause justifying the . . . untimely proposed amendment.").

Because Ramos Law lacks good cause under Rule 16(b)(4) to amend after the Scheduling Order deadline, the Court need not consider whether amendment would be permissible under Rule 15(a). *See Gorsuch*, 771 F.3d at 1242. The Motion to Amend is respectfully **DENIED**.

## CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

(1)    Plaintiff's Motion for Leave to File First Amended Complaint and Jury Demand [Doc. 43] is **DENIED**.

---

than merely addressing the issues raised in the Court's order on the motion to dismiss. [Doc. 47 at 4–5]. Until now, Ramos Law has only sought a contingent fee calculated from the "bodily insurance" portion of the insurance payment, which placed its claimed fee at roughly $1.48 million. [Doc. 4 at ¶¶ 20–21, 33–34]. But Ramos Law's proposed amended complaint reverses course and seeks a contingent fee on the entire insurance payment, which raises the fee to just under $2.9 million. [Doc. 43-1 at 27–28]. And after Mr. Petrushka noted this in his response brief, Ramos Law did not acknowledge the change in its Reply. *See* [Doc. 48]. Ramos Law's unexplained attempt to use an untimely amendment to double its damages request further supports the Court's conclusion that Ramos Law failed to exercise reasonable diligence in delaying its request for leave to amend.

DATED:  May 5, 2026                              BY THE COURT:

_____
Nina Y. Wang
United States District Judge